[Cite as *State v. Rivera*, 2025-Ohio-4881.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

STATE OF OHIO                          :
:          C.A. No. 2025-CA-10
       Appellee                        :
:          Trial Court Case No. 2021 CR 125
v.                                     :
:          (Criminal Appeal from Common Pleas
DAWN ELIZABETH RIVERA                   :          Court)
:
       Appellant                       :          **FINAL JUDGMENT ENTRY &**
:          **OPINION**

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on October 24, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Mary K. Huffman*

_____
MARY K. HUFFMAN, JUDGE

EPLEY, P.J., and TUCKER, J., concur.

STEVEN H. ECKSTEIN, Attorney for Appellant
JANE A. NAPIER, Attorney for Appellee

HUFFMAN, J.

{¶ 1} Dawn Elizabeth Rivera appeals from her conviction on one count each of operating a vehicle while under the influence ("OVI"), endangering children, tampering with evidence, and possession of a fentanyl-related compound. For the following reasons, the judgment of the trial court is affirmed.

**Facts and Procedural History**

{¶ 2} The events giving rise to this matter occurred on June 24, 2021, when Rivera was observed driving erratically, nearly striking multiple vehicles and hitting a mailbox. She stopped in a Dollar General parking lot in the Village of St. Paris where she was subsequently arrested. Rivera's young child was in her vehicle at the time. When Rivera was first confronted by police officers at the scene, Rivera raised her voice and threw a cigarette pack containing a fentanyl-related compound to her child.

{¶ 3} Rivera was indicted on August 2, 2021, on the above counts, as well an additional count of endangering children and two additional counts of possession of a fentanyl-related compound.

{¶ 4} On October 19, 2021, Rivera withdrew her not guilty pleas and pled guilty to OVI, endangering children, tampering with evidence, and possession of a fentanyl-related compound, and the State dismissed the remaining counts. Sentencing initially occurred on November 18, 2021, via Zoom, and Rivera appeared from a drug treatment facility. The court orally imposed a term of six months in the Tri-County Jail for OVI, and prison terms of

12 months for endangering children, 36 months for tampering with evidence, and 12 months for possession of a fentanyl-related compound, all to run concurrently for an aggregate prison term of 36 months. The court advised Rivera that the sentence would not become effective until journalized. Rivera indicated that her treatment was scheduled to end in January 2022, but the court stated that it could not delay the imposition of her sentence until then. The court ordered Rivera to report to the Tri-County Regional Jail the following day, no later than 11:00 a.m. The court admonished Rivera that it would issue a warrant for her arrest if she failed to appear at the jail, and that it could "potentially change your sentence to something more severe" if she did not report as ordered. Rivera acknowledged her understanding.

{¶ 5} On November 19, 2021, after Rivera failed to report to the jail as ordered, the court issued a capias warrant for her arrest. The entry repeated the court's admonishment that if Rivera failed to appear, the court could hold another sentencing hearing and potentially increase Rivera's sentence because the court's sentencing order would not be final until journalized. The entry further indicated that court staff had contacted Rivera's caseworker at the treatment facility and learned that she had left the facility with her girlfriend at 8:30 p.m. on November 18, 2021, against the advice of staff, and that her whereabouts were unknown. The entry stated that the court had contacted the jail again at 1:22 p.m. and learned that Rivera still had not reported. The court indicated that a journal entry of conviction would not be filed until Rivera was placed in custody. On December 9, 2021, the court issued a journal entry memorializing Rivera's failure to report to the Tri-County Regional Jail as ordered.

{¶ 6} Rivera was arrested on her capias, and on February 3, 2025, the court held a second sentencing hearing and issued the judgment entry of conviction from which this

appeal arose. The court sentenced Rivera to 6 months in jail for OVI (Count 1) and to prison terms of 12 months for endangering children (Count 2), 36 months for tampering with evidence (Count 4), and 12 months for possession of a fentanyl-related compound (Count 5). The court ordered the sentences imposed for Counts 1, 2, and 4 to be served concurrently to each other but consecutively to the term imposed for Count 5, for an aggregate term of 48 months.

**Assignment of Error and Analysis**

{¶ 7} Rivera's assignment of error asserts that her 48-month sentence is contrary to law because the "unreasonable delay" in sentencing divested the court of jurisdiction pursuant to Crim.R. 32. She cites *State v. Pete,* 2023-Ohio-4406 (7th Dist.), and directs our attention to multiple cases discussed therein. Rivera argues that "Ohio authorities knew her whereabouts," namely "rehab," that in issuing the capias warrant the court "took only one step to secure" her appearance and then remained idle, that she had been living near the courthouse in Champaign County, and that the court "could have simply filed the sentencing entry the same day as the first sentencing hearing." In her reply brief, Rivera argues that the delay is a "bad practice for trial courts to implement," and her conviction should be reversed and the case dismissed.

{¶ 8} It is well-settled that "[a] court speaks only through its journal entries." *State v. Inscho*, 2019-Ohio-809, ¶ 20 (2d Dist.), citing *State v. Ellington*, 36 Ohio App.3d 76, 77-78 (9th Dist. 1987). "Absent statutory authority, a trial court is generally not empowered to modify a criminal sentence by reconsidering its own final judgment." *State v. Carlisle*, 2011-Ohio-6553, ¶ 1. "A criminal sentence is final upon issuance of a final order." *Id.* at ¶ 11. "A judgment of conviction is a final order subject to appeal under R.C. 2505.02 when it sets forth (1) the fact of the conviction, (2) the sentence, (3) the judge's signature, and (4) the

4

time stamp indicating the entry upon the journal by the clerk." *State v. Lester*, 2011-Ohio-5204, paragraph one of the syllabus, citing Crim.R. 32(C). The Ninth District has emphasized that "'[w]here there has been no journalization of [a criminal] sentence, a sentence announced in open court may be amended without formal judgment entry.'" *State v. Hensley*, 2023-Ohio-2910, ¶ 12 (9th Dist.), quoting *State v. Overstreet*, 2003-Ohio-4530, ¶ 8 (9th Dist.). *See also State v. McLaughlin*, 2004-Ohio-1780, ¶ 7 (10th Dist.) ("a pronouncement of sentence does not become the official action of the court unless and until it is entered upon the court's journal.") "Courts may increase sentences when the sentence does not constitute a final order." *Overstreet* at ¶ 8. In *Hensley,* the court affirmed a trial court's authority to increase the defendant's sentence after the oral pronouncement because no final sentencing entry had been issued. *Id.* at ¶ 15 ("because the sentence originally pronounced was not a final order, the trial court did not err when it subsequently entered a final sentencing order that increased Hensley's sentence.")

{¶ 9} Crim.R 32(A), to which Rivera directs our attention, states that a "[s]entence shall be imposed without unnecessary delay." *Pete* noted that Ohio courts of appeal have held that "'[a]n unreasonable delay between a plea and a sentencing, which cannot be attributed to the defendant, will invalidate that sentence.'" (Bracketed text in original.) *Id.* at ¶ 18, quoting *State v. Martinez*, 2010-Ohio-2007, ¶ 6 (6th Dist.).[1]

---

[1] As the State asserts, Rivera mischaracterizes the holding in *Martinez* when she argues that the Sixth District "concluded the trial court's two-year delay in sentencing Martinez was unreasonable and the trial court was divested of jurisdiction to sentence him." Although Martinez argued that his sentence should be vacated because the delay of two years and four months between his guilty plea and sentencing divested the court of jurisdiction to sentence him, the court concluded that "appellant's delay in sentencing [was] solely attributable to his failure to appear at his initial sentencing date" and affirmed the judgment of the trial court. *Id.* at ¶ 17.

{¶ 10} The cases in *Pete* upon which Rivera relies are distinct from the facts of her case. For example, in *State v. Brown*, 2003-Ohio-1218 (7th Dist.), the defendant, Brown, pled guilty to charges in one county, but prior to sentencing, he was arrested and detained in another county pursuant to a request for extradition to Colorado. *Id.* at ¶ 4. Brown was extradited to Colorado, and when he failed to appear at his scheduled sentencing, the trial court ordered the sheriff to retrieve Brown from Colorado and issued a bench warrant for his arrest. *Id.* at ¶ 5-6. Brown, however, was not returned to Ohio, and neither the State nor the court made any effort to facilitate a sentencing hearing. *Id.* at ¶ 7, 29. Finally, three years after Brown entered his guilty pleas, he was sentenced via video conference. *Id.* at ¶ 10. The Seventh District Court of Appeals found that Brown's extradition was involuntary and that he had asked the trial court presiding over the extradition request to facilitate his sentencing in Ohio, which did not happen. *Id.* at ¶ 22-23. The Seventh District concluded that "the delay in sentencing caused by the extradition must be attributed to the state and cannot be attributed to appellant." *Id.* at ¶ 23. The court determined that the "trial court [had] no jurisdiction to render a sentence in this matter" and reversed the judgment of the trial court. *Id.* at ¶ 31.

{¶ 11} In *State v. Johnson*, 2003-Ohio-6261 (12th Dist.), after pleading guilty to several felony charges, the defendant, Johnson, failed to appear at sentencing. *Id.* at ¶ 2. Shortly after the date of the sentencing hearing, Johnson was arrested in Kentucky. *Id.* Johnson was eventually convicted in connection with the arrest and sentenced to a ten-year prison sentence. *Id.* Over a three-year span, Johnson and his counsel sent correspondence to the trial court requesting final disposition of his Ohio case. *Id.* at ¶ 4-7. But the trial court did not sentence Johnson until he was released from prison in Kentucky over six years after the date of his original sentencing hearing. *Id.* at ¶ 9. Following the principles articulated in

*Brown,* the Seventh District Court of Appeals held that the six-year delay in Johnson's sentencing was unreasonable. *Id.* at ¶ 14-18. The court determined that the trial court lacked jurisdiction to render a sentence in Johnson's case. *Id.* at ¶ 18.

{¶ 12} Finally, in *State v. Owens*, 2009-Ohio-1508 (7th Dist.), the Seventh District found a 13-month period between the guilty plea and sentencing of a defendant, Owens, to be unreasonable. The court considered the following circumstances: (1) Ohio authorities knew Owens's whereabouts in Pennsylvania; (2) Owens had waived extradition; (3) the State took no action for thirteen months; (4) Owens was jailed not far from the trial court (located in a county bordering Pennsylvania); and (5) alternative methods were available to sentence Owens absent extradition. *Id.* at ¶ 34. The court concluded that the "state and the trial court had several methods to effectuate a valid sentence upon Owens within a reasonable time, and they failed to do so," and it vacated Owens's sentence. *Owens* at ¶ 38.

{¶ 13} Rivera overlooks the fact that the trial court orally pronounced her sentence on November 18, 2021, but did not journalize the entry. At that time, she was ordered to report to the Tri-County Jail on November 19, 2021, at 11:00 a.m. and was told that her judgment entry of conviction would not be filed until then. Rivera agreed to those terms. The court made clear to Rivera that "any failure to report could cause the court to . . . issue a capias for your arrest [and] bring you back and potentially change your sentence to something more severe." Rivera specifically acknowledged that she understood the court's admonishment.

{¶ 14} At the February 3, 2025 sentencing hearing, the court noted that Rivera had been advised that a court speaks only through its journal entries and not by oral pronouncement. The court indicated that it modified Rivera's sentence "for [her] continued failure to appear" and that it learned she was being held in jail on January 31, 2025. The court stated it had continued to "check the jail rosters" in Rivera's absence. Contrary to

7

Rivera's suggestion, the court did not know of her location. It knew only that she had left the facility of her treatment program the night before she was originally scheduled to report to jail in 2021. Counsel for Rivera advised the court that she had failed to appear at jail because she was "scared," she did not want to be away from her child, her girlfriend had passed away, and Rivera's mother had dementia. Rivera stated that after she left the treatment facility, she went to her home in Miami County and was not in Champaign County, as she suggests in her brief. Any delay in Rivera's sentencing was attributable to her conduct only.

{¶ 15} As in *Hensley,* the sentence originally pronounced by the trial court was not a final order. The trial court did not err when it subsequently entered the final judgment entry of conviction that increased Rivera's sentence by requiring that Counts 1, 2, and 4 be served consecutively to Count 5 (without altering the original sentences imposed on each count). We find no basis to conclude that Rivera's case should have been dismissed. Accordingly, her sole assignment of error is overruled.

### Conclusion

{¶ 16} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J., and TUCKER, J., concur.